[No. D047879. Fourth Dist., Div. One. May 23, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
JORGE DIEGO OROPEZA, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION[1]]**

---

[1] Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of Discussion parts B., C., D., E., F., G., H. and I.

74

**COUNSEL**

Charles M. Sevilla for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Mary Jo Graves, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Gil Gonzalez and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BENKE, Acting P. J.**—Jorge Diego Oropeza was convicted of first degree murder, attempted first degree murder, shooting at an inhabited vehicle and discharging a firearm from a vehicle. It was found true as to the convictions for murder and the shooting at and from a vehicle Oropeza discharged a firearm within the meaning of Penal Code[2] section 12022.53, subdivision (d). With regard to the attempted murder conviction, it was found true Oropeza discharged a firearm within the meaning of section 12022.53, subdivision (c). It was also found true, as to the convictions for attempted murder and shooting at an inhabited vehicle, he used a firearm within the meaning of section 12022.5, subdivision (a), and it was found true he used a firearm within the meaning of section 12022.5, subdivision (a)(1), as to the conviction for murder.

Oropeza was sentenced to a prison term of 80 years to life. He appeals, arguing the trial court erred in refusing to give various requested instructions, erred with regard to various evidentiary rulings and erred in imposing some of the firearm discharge enhancements. He also contends the prosecutor engaged in misconduct during argument to the jury.

## FACTS

### A. *Prosecution Case*

#### 1. *Crimes*

In the early morning of March 6, 2004, Eglen Coss, his cousin Moraima Coss (Moraima) and her boyfriend Noah Johnson were driving home on Interstate 805 after an evening in Tijuana. Coss was driving, Johnson was in the passenger seat and Moraima was sitting between them. As they drove north, a confrontation occurred between Coss and the occupants of a silver Ford F-150 pickup truck who apparently believed Coss had "cut them off." At first there was yelling and an exchange of offensive hand gestures. Then as the vehicles drove side by side, with a lane between the two vehicles, a person wearing a red shirt and sitting in the front passenger seat of the Ford stuck his arm out the window and fired a handgun. The bullet passed through Coss's arm, striking Moraima in the head and killing her. Coss stopped to summon help. The Ford pickup truck drove away.

#### 2. *Investigation*

About 11:00 p.m. on March 7, 2004, Coss was shown a photographic lineup containing a photograph of appellant. Coss identified a person other

---

[2] All further statutory references are to the Penal Code unless otherwise specified.

than appellant as the shooter. Two days later, Coss was shown a second lineup again containing a photograph of appellant. Coss picked out appellant's picture, stating: "Looks mostly like number three." Coss was at appellant's arraignment and told a detective appellant was the man who fired the shot.

On the evening of March 7, 2004, Johnson was shown a photographic lineup containing appellant's picture. He identified someone other than appellant as the shooter. Two days later he was shown a second photographic lineup again containing appellant's photograph. He stated two of the persons looked like the shooter. Asked to pick one, he picked the photograph of appellant.

Jose Lopez, who as part of a plea bargain pled guilty to voluntary manslaughter regarding the death of Moraima, testified that in the early morning of March 7, 2004, he and appellant were returning from Tijuana in a silver Ford F-150 pickup truck. Because appellant was drunk, Lopez drove. Lopez stated that after entering the United States they were "cut off" by another vehicle. The trucks continued up the freeway with the occupants exchanging abusive words and gestures. Eventually, appellant drew a gun and fired a shot. Lopez drove away.

At trial, Lopez, for the first time, stated a third man, Andrew Anguiano, was in the truck with him and appellant at the time of the shooting. The prosecution was unaware until trial of this third man. Anguiano testified at trial that the night of the shooting he was returning from Tijuana with Lopez and appellant. The F-150 truck has a backseat and Anguiano was sitting in it. Anguiano testified concerning the confrontation that morning and stated appellant fired the shot.

Both Coss and Johnson identified appellant at trial as the shooter.

B.  *Defense Case*

The defense offered no witnesses. Appellant argued there was a reasonable doubt concerning the identity of the shooter. Appellant further argued the persons in the truck with him, Lopez and Anguiano, had obvious motives to claim appellant fired the fatal shot. Appellant argued Coss and Johnson could reasonably, under the circumstances, misperceive who fired the shot.

## DISCUSSION

### A. *Instruction on Defenses and Lesser Included Offenses*

Appellant argues the trial court erred when it denied his request to instruct on self-defense and on the lesser included offense of voluntary manslaughter based both on heat of passion and imperfect self-defense.

#### 1. *Law*

■ The trial court must instruct the jury on all general principles of law relevant to the issues raised by the evidence, whether or not the defendant makes a formal request. This obligation requires instructions on lesser included offenses if there is substantial evidence that, if accepted by the trier of fact, would absolve the defendant of guilt of the greater offense but not of the lesser. (*People v. Rogers* (2006) 39 Cal.4th 826, 866–867 [48 Cal.Rptr.3d 1, 141 P.3d 135].) The obligation also applies, with reservations not applicable here, to instruction on defenses when they are supported by substantial evidence. (*People v. Barton* (1995) 12 Cal.4th 186, 195 [47 Cal.Rptr.2d 569, 906 P.2d 531].)

In this context substantial evidence means evidence which is sufficient to deserve consideration by the jury and from which a jury composed of reasonable persons could conclude the particular facts underlying the instruction existed. The trial court is not required to present theories the jury could not reasonably find to exist. (*People v. Wickersham* (1982) 32 Cal.3d 307, 324 [185 Cal.Rptr. 436, 650 P.2d 311]; *People v. Flannel* (1979) 25 Cal.3d 668, 684–685, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1].)

On appeal, we review independently the question whether the trial court failed to instruct on defenses and lesser included offenses. (See, e.g., *People v. Waidla* (2000) 22 Cal.4th 690, 739 [94 Cal.Rptr.2d 396, 996 P.2d 46].)

#### 2. *Background*

While not using the term self-defense, it was appellant's position even before trial Coss's aggressive and provocative driving played a significant part in the "road rage incident" and the eventual shooting.

At trial several versions of the events immediately preceding the shooting were given by witnesses. Coss stated he first saw the Lopez truck as they got on the freeway near the border. It appeared Lopez wanted to race and Coss gestured to him that he was not interested. Coss stated that after the initial encounter he was driving in the fast lane of the 805 Freeway when appellant's

truck approached rapidly from behind in the same lane. When Lopez began "tailgating" him, Coss moved over to get out of the way. As appellant's truck came beside them, Coss moved over another lane. Appellant, in the front passenger seat, leaned outside the truck and gestured at him. Coss replied with an offensive gesture. This continued for a time and eventually appellant placed a gun out the window and fired. Coss stated that as the gesturing was occurring, he was driving normally in his lane.

Johnson stated that while they were in the fast lane on the 805 Freeway, the Ford truck approached rapidly from the rear. Coss moved over two lanes. As he did so, the passenger and the driver in the Ford made obscene gestures. Coss and Johnson made rude gestures in response. The passenger of the truck then fired at them. Johnson stated that neither truck "brake checked" the other. In brake checking, the driver of a car followed by a second car taps the brakes, thus requiring the following car to brake. Johnson also stated that once the trucks were driving with a lane between them, they did not move out of the lanes until after the shot was fired.

Anguiano, the second passenger in the truck with appellant, testified that on their way home from Tijuana, the men got into a confrontation with the occupants of another truck. Anguiano stated after entering the 805 Freeway, the two trucks drove fast side by side, "showing off" to each other. Anguiano testified it was the driver of the other truck that started making rude hand gestures. Appellant then replied with rude hand gestures. The confrontation ended when appellant fired a shot. Anguiano stated that when the shot was fired there was a lane between the two vehicles. He stated that during the confrontation the other truck did not swerve at them or "throw itself at them."

Lopez gave inconsistent accounts of the incident. On direct examination Lopez testified that as they were entering the freeway near the border they were cut off by Coss's truck. The driver of that truck said something to appellant and appellant replied. At the merge of the 5 and 805 Freeways, Lopez started to veer toward the 5 Freeway to avoid a confrontation with Coss's truck that appeared to be going to the 805 Freeway. Appellant asked Lopez why he was going to the 5 Freeway when they lived off the 805 Freeway. Lopez changed his mind and proceeded to the 805 Freeway. Lopez stated the other truck pulled away but he caught up to it. He testified both trucks were in the No. two lane, i.e., the second lane from the far left or "fast lane." Lopez stated that when he approached within less than a car length of the other truck, it "brake checked" him. Lopez said he then moved into the "fast lane." Lopez stated the other truck sped up and the two raced ahead. The other truck then moved into the No. three lane and the two trucks went up the freeway with appellant and the driver of the other truck exchanging words. Lopez stated the trucks maneuvered, changing lanes and brake checking each

other. Lopez testified that when the shot was fired the trucks were "side by side." It is unclear from Lopez's testimony in which lanes the trucks were traveling. Lopez testified that at the moment the shot was fired the other truck was not swerving into or brake checking them. Lopez did testify, however, that at times the other truck swerved at them.

During cross-examination the defense played the recording of a police interview with Lopez two days after the shooting. Lopez told the officers that after they returned from Tijuana another truck tried to run them off the road. He thought the occupants of the other truck were "talking shit" to appellant. Lopez told the officers the other truck swerved at them. He stated he "guessed" the driver of the other truck got close, appellant "snapped" and at about that time Lopez heard a bang. Lopez stated the trucks raced and jockeyed positions. They maneuvered and brake checked each other. The trucks never touched. The other truck did swerve at them.

The defense also played the recording of a police interview of Lopez about two weeks after the shooting. Lopez again stated that on returning from Tijuana, Coss was "showing off." Lopez paid no attention and eventually Coss cut him off. He again related that the vehicles raced, maneuvered around each other and brake checked each other. He stated the other truck swerved at them. Lopez stated appellant and the driver of the other truck began arguing and it was then that appellant fired.

Lopez stated that at the merge of the 5 and 805 Freeways he first decided to go off on the 5 Freeway to avoid any confrontation with the other truck. Appellant reminded him they did not live in that direction. Lopez decided he did not have to back down and veered back onto the 805 Freeway. Lopez stated that as he and the other truck went up the freeway they were cutting each other off. The two at times moved close to each other and brake checked each other. At one point the other truck swerved into his truck and appellant and the driver of the other truck began talking to each other. The trucks began swerving at each other and it was at that point appellant fired.

Lopez told the officers that during the racing appellant was encouraging Lopez to go faster and was saying, "Fuck them." As the trucks were next to each other the other truck moved over towards them and Lopez had to move out of the way. Appellant and the driver of the truck were yelling at each other. The other truck swerved at them. As Lopez pulled over slightly onto the shoulder, appellant took out the gun. Appellant fired the gun and then said to Lopez, "Go home."

After the tapes were played, Lopez testified on cross-examination that after the other truck cut him off he accelerated to catch up with it. After he was cut

off, appellant told him to go faster and catch up to the other truck. Lopez came up to within a car's length of the other truck. A series of brake checks then occurred with one driver getting in front of the other truck and then tapping his brakes. Lopez stated that on several occasions the other truck swerved at his truck. As it did so, Lopez was afraid there might be a collision and on several occasions he had to take evasive maneuvers. He stated the swerving was "scary." Lopez stated that as the swerving and evasive maneuvers were occurring, appellant was hanging out the window, making rude gestures at the other truck and exchanging words with the driver. Lopez stated that it was when the other truck swerved at them that appellant fired a shot.

Lopez was charged with murder arising out of the shooting. He entered a plea to a lesser charge. It was pointed out to Lopez he stated in his change of plea form that at the time the shot was fired, the other truck was not being driven in a manner that threatened Lopez or appellant.

Lopez then testified the shot was not fired during one of the times when the other truck swerved at them. It was fired later while the two trucks were next to each other and appellant and the driver of the other truck were arguing.

Appellant did not testify.

Defense counsel requested instructions on self-defense and defense of others. He noted Lopez testified the other truck swerved at them four times. Counsel noted if Lopez's testimony were believed, it was possible the shooter fired in self-defense or at least in imperfect self-defense. The trial court stated appellant's defense was that he did not fire the shot. The court stated, therefore, there was no evidence appellant took any action in response to the claimed swerving of the other truck or that either Lopez or Anguiano testified it was necessary to shoot at the other truck. The trial court denied the request to instruct on the defense of self-defense or voluntary manslaughter based on imperfect self-defense.

Appellant also requested instructions on voluntary manslaughter based on sudden quarrel or heat of passion. The trial court denied the request, stating there was no substantial evidence that would support a finding of voluntary manslaughter on that theory.

3. *Discussion*

a. *Self-defense and Imperfect Self-defense*

Appellant argues the trial court erred in denying his request to instruct on self-defense and on voluntary manslaughter based on a theory of imperfect self-defense. It did not.

■ "The subjective elements of self-defense and imperfect self-defense are identical. Under each theory, the appellant must actually believe in the need to defend himself against imminent peril to life or great bodily injury. To require instruction on either theory, there must be evidence from which the jury could find that appellant actually had such a belief." (*People v. Viramontes* (2001) 93 Cal.App.4th 1256, 1262 [115 Cal.Rptr.2d 229].)

Appellant did not testify and made no out-of-court comments indicating that when he fired, he believed it necessary to defend his life or to avoid great bodily injury. It is the case that the "substantial evidence of a defendant's state of mind may be found in the testimony of witnesses other than a defendant." (*People v. Hill* (2005) 131 Cal.App.4th 1089, 1102 [31 Cal.Rptr.3d 891]; see *People v. De Leon* (1992) 10 Cal.App.4th 815, 824 [12 Cal.Rptr.2d 825].) Here, however, no witness testified appellant fired out of fear or testified appellant appeared fearful. No witness to the incident, not even Lopez in any of his various versions of the incident, stated they believed deadly force was necessary to protect them. Lopez went no farther than to state that the mutual acts of "road rage" in which he was admittedly engaged were "scary." The only substantial evidence of appellant's state of mind is found in testimony concerning his aggressive and provocative behavior. It suggests only that he fired the shot as an act of aggression. (See generally *People v. Hill, supra*, 131 Cal.App.4th at p. 1102.)

b. *Voluntary Manslaughter*

Appellant argues the trial court erred when it refused to instruct on voluntary manslaughter based on sudden quarrel and heat of passion. Appellant notes there was evidence the incident began when Coss's truck cut off the truck in which appellant was a passenger, that Coss continued to provoke appellant with his aggressive driving, his yelling and his obscene gestures. Appellant argues he clearly acted in the heat of passion; and because there was adequate provocation by Coss and those in his truck, the trial court was required to instruct concerning the lesser included offense of voluntary manslaughter based on sudden quarrel or heat of passion.

■ A defendant commits voluntary manslaughter and not murder when he or she intentionally and unlawfully kills "upon a sudden quarrel or heat of passion." (§ 192, subd. (a).) Voluntary manslaughter has both a subjective and an objective requirement. The defendant must kill while actually in the heat of passion. That heat of passion, however, must be aroused by sufficient provocation judged objectively. " ' [T]his heat of passion must be such a passion as would naturally be aroused in the mind of an ordinarily reasonable person under the given facts and circumstances,' because 'no defendant may set up his own standard of conduct and justify or excuse himself because in

fact his passions were aroused, unless further the jury believe that the facts and circumstances were sufficient to arouse the passions of the ordinarily reasonable man.' [Citation.]" (*People v. Steele* (2002) 27 Cal.4th 1230, 1252–1253 [120 Cal.Rptr.2d 432, 47 P.3d 225].)

■   Because the test of sufficient provocation is an objective one based on a reasonable person standard, the fact the defendant is intoxicated or suffers from a mental abnormality or has particular susceptibilities to events is irrelevant in determining whether the claimed provocation was sufficient. (*People v. Steele, supra,* 27 Cal.4th at p. 1253.)

A defendant may not provoke a fight, become the aggressor, and, without first seeking to withdraw from the conflict, kill an adversary and expect to reduce the crime to manslaughter by merely asserting that it was accomplished upon a sudden quarrel or in the heat of passion. The claim of provocation cannot be based on events for which the defendant is culpably responsible. (*People v. Johnston* (2003) 113 Cal.App.4th 1299, 1312–1313 [7 Cal.Rptr.3d 161]; *People v. Hoover* (1930) 107 Cal.App. 635 [290 P. 493].)

As was stated in *People v. Hurtado* (1883) 63 Cal. 288, 292: "In an abstract sense anger is never reasonable, but the law, in consideration of human weakness, makes the offense manslaughter when it is committed under the influence of passion caused by an insult or provocation sufficient to excite an irresistible passion in a reasonable person; one of ordinary self-control."

■   There is certainly evidence appellant acted in the heat of passion. The question is whether the claimed provocation for his impassioned state of mind was sufficient, i.e., the provocation was sufficient to arouse such passion in an ordinarily reasonable person and the provocation was not based on events for which appellant was responsible. Viewed in a manner most favorable to appellant, this incident began when Coss intentionally cut off the truck in which appellant was riding. While an ordinarily reasonable person might be angered by the act, such a person would not pursue or encourage the driver of a vehicle in which he or she was a passenger to follow the offending vehicle at a high rate of speed and engage in highly aggressive driving and abusive personal behavior. Coss departed after cutting off Lopez. Had Lopez, with appellant's encouragement, not made extraordinary efforts to catch up to him and then engage in an alcohol-infused, ego-inspired act of mutual road rage, the shooting would never have occurred.

While appellant showed an abundance of human weakness, it was not of a type such that the law is willing to declare his acts less culpable. The trial court acted properly in not instructing the jury concerning voluntary manslaughter based on sudden quarrel or heat of passion.

B.–I.*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

## DISPOSITION

The matter is remanded for resentencing. In all other respects, the judgment is affirmed.

McIntyre, J., and Aaron, J., concurred.

A petition for a rehearing was denied June 11, 2007, and appellant's petition for review by the Supreme Court was denied August 29, 2007, S153924.

---

*See footnote, *ante*, page 73.