Filed 3/4/13  P. v. Diaz CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>OSCAR ROBLES DIAZ,<br><br>  Defendant and Appellant. | G046174<br><br>(Super. Ct. No. 09CF1360)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, William R. Froeberg, Judge.  Affirmed.

Tonja R. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Seth M. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury convicted defendant and appellant Oscar Robles Diaz of second degree murder in the 2009 stabbing death of Leon Torres. Diaz contends the trial court erred in excluding evidence that three years earlier Torres threatened to shoot his landlord's son in an argument over unpaid rent. The court excluded the 2006 incident under Evidence Code section 352[1] because it had only "marginal[] probative" value and admitting it would "confuse the issues at trial [and] . . . unduly consume time." Diaz argues the evidence supported his self-defense claim because it showed Torres's propensity for violence. We find no abuse of discretion and affirm the trial court's judgment.

I

FACTS AND PROCEDURAL HISTORY

Diaz, Torres, Faustino Diaz, and Rafael Herrera were four of approximately 15 people who shared the same house in Santa Ana, California.[2] The four men drank beer together in the front yard late one night in May 2009. At the time, Diaz and Torres had known each other for the two months they lived in the house, but they rarely interacted. Diaz and his uncle, Faustino, drank earlier that evening with some friends. Similarly, Torres and Herrera had begun drinking at a friend's house much earlier in the day.

Initially, the four men drank beer and talked without any problems. At some point, however, a disagreement arose with Diaz and Faustino on one side and Torres on the other. Diaz and Faustino nearly came to blows with Torres, but Herrera stepped between the men and asked, "'Are we here to drink or are we here to fight?'"

---

[1]     All statutory references are to the Evidence Code unless otherwise stated.

[2]     We will refer to Faustino Diaz by his first name to avoid any confusion with Diaz. No disrespect is intended. (*Martin v. PacifiCare of California* (2011) 198 Cal.App.4th 1390, 1393, fn. 1.)

2

That comment calmed everyone down and the four men resumed drinking beer and talking.

Faustino testified he was talking with Herrera when he heard a fight break out behind him between Diaz and Torres. He did not see how the fight started, but when he turned around he saw the two men punching and grabbing each other. Faustino testified he stepped between Diaz and Torres to separate them and saw a lot of blood as a pocketknife fell from Diaz's hand. At that point, Diaz fled the scene as Torres sat on the ground bleeding profusely. Faustino attempted to help Torres, but Herrera told him to leave.

Herrera testified he did not see the fight. Rather, after the men resumed drinking beer and talking, Herrera walked into the house to use the restroom. When he returned, Diaz and Faustino were gone and Torres was leaning against the fence bleeding. Herrera phoned for help, but Torres died from the knife wounds inflicted during the fight. An autopsy revealed Torres suffered 20 stab wounds to his neck, head, torso, and extremities. Eleven of those wounds were to his back and the back of his legs.

Diaz agreed to speak with investigators after his arrest for Torres's death. Initially, Diaz claimed he intervened to prevent Torres from carrying out his threat to kill Faustino. When Diaz stepped in to protect Faustino, Torres pulled a knife and told Diaz, "'You will go first.'" Torres then assaulted Diaz, cutting his finger with the knife and striking blows. At that point, Diaz fought back. He told the investigator he wrestled the knife from Torres because he felt "'obligated'" to do so. Diaz also claimed he had heard Torres killed someone in Mexico.

The investigator told Diaz he did not believe Diaz's version of the altercation because other witnesses blamed Diaz for starting the fight. The investigator warned Diaz, "'You will find yourself having more problems if you lie.'" At that point, Diaz conceded the fight started when he got angry because Torres insulted him and kicked him in the shin. After Torres kicked him, Diaz pulled his pocketknife and swung

3

it at Torres with his right hand. As Torres backed up, Diaz tried to grab Torres with his left hand but missed and cut his own finger.

As the fight progressed, Torres fell to the ground as Diaz jumped on top of him and stabbed him in the stomach. Diaz altered his grip on the knife and repeatedly stabbed Torres in an up and down motion. He reenacted the entire fight with the investigator posing as Torres during the brawl. Diaz never claimed he was afraid of Torres or feared for his life. Instead, he repeatedly admitted he angrily stabbed Torres because Torres insulted him. Indeed, Diaz acknowledged he was so furious and enraged he blacked out at one point.

The prosecutor charged Diaz with murder and an enhancement for using a deadly weapon. Before trial, the prosecutor asked the court to exclude defense evidence that in 2006 Torres threatened to shoot his landlord's son when the son came to Torres's residence to turn off the power for failing to pay the rent. When uttering the threat, Torres held his hand under his shirt as though he was holding a gun, although the landlord's son was unsure whether Torres actually possessed a firearm. The landlord's son called 911 and reported, "'I think he might have a gun. I haven't seen the gun. We don't know the identity of these people. They gave us false names. We just need the police to come out here and get their identification information because they're going to leave and not pay rent.'" At the same time, Torres's son called 911 and reported the landlord's son had threatened Torres's family with a knife. When the police arrived they arrested Torres, but according to the prosecutor they did not find any weapons and Torres was never convicted of a crime.

In opposition, Diaz disputed several representations the prosecutor made regarding the 2006 incident. Diaz explained (1) the landlord's son saw a gun in Torres's hand and merely told the police he did not know if the gun was real; (2) contrary to the prosecutor's representation, investigators found two pellet guns in Torres's residence; (3) the prosecutor failed to point out that Torres also told the landlord's son, "'You think

4

you're the first person I've killed?'"; and (4) although Torres was not convicted under Penal Code section 422 for making threats, the case "settled" when Torres pleaded guilty to disturbing the peace. Diaz argued evidence of the 2006 incident was relevant to his self-defense and imperfect self-defense claims because it showed Torres had a propensity for violence and was likely the aggressor in the fight with Diaz.

The trial court excluded the 2006 incident under section 352, explaining it found the evidence "marginally probative" and admitting it would "confuse the issues at trial [and] . . . unduly consume time." Finally, the court stated it would reconsider its ruling if warranted by other evidence at trial.

Diaz twice asked the court during trial to reconsider its ruling, but the court rejected both requests because none of the evidence altered the court's view that the 2006 incident was marginally relevant. In rejecting Diaz's final request, the court reiterated, "[t]he main reason it's not going to be admitted is because of the undue consumption of time and the tendency to confuse the issues."

The jury found Diaz guilty of second degree murder and using a deadly weapon in the commission of that offense. The court later sentenced Diaz to a term of 16 years to life in prison. He timely appealed.

II

DISCUSSION

A. *The Trial Court Did Not Abuse Its Discretion in Excluding Evidence Regarding the 2006 Incident*

Diaz's sole contention on appeal is that the trial court erred in excluding evidence of the 2006 incident. Diaz argues the evidence was admissible as character evidence to show Torres had a propensity for violence, which supported Diaz's initial statement to the police investigator that he "acted in self-defense when Torres pulled a knife, hit him, cut him and threatened him." We find no error in the trial court's ruling.

5

Section 1101, subdivision (a), establishes the general rule that evidence of a person's character or a trait of his or her character is inadmissible when offered to prove the person acted in conformity with that character or trait on a specific occasion. Section 1103, subdivision (a)(1), provides an exception to that general rule applicable only in criminal cases. It allows "evidence of the character or a trait of character . . . of the victim of the crime for which the defendant is being prosecuted . . . if the evidence is: [¶] . . . [o]ffered by the defendant to prove conduct of the victim in conformity with the character or trait of character." Thus, section 1103, subdivision (a)(1), permits evidence of a victim's character when it is offered to explain, justify, or excuse the defendant's conduct toward the victim (*People v. Tackett* (2006) 144 Cal.App.4th 445, 455 (*Tackett*)), and may be "in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct" (§ 1103, subd. (a)).

Defendants charged with violent crimes may offer evidence of a victim's character for violence to show the defendant acted in self-defense. (*Tackett*, *supra*, 144 Cal.App.4th at p. 454.) Evidence of the victim's violent character can be relevant in two ways: (1) the defendant's knowledge of the victim's violent character tends to show the defendant's apprehension the victim would harm him or her was reasonable; and (2) if the defendant did not know about the victim's violent character, evidence of that character nonetheless tends to show the victim was probably the aggressor. (1 Witkin, Cal. Evidence (5th ed. 2012) Circumstantial Evidence, § 59, p. 437.) The victim's violent character, however, is irrelevant unless there is "some evidentiary support for a self-defense-type theory that the defendant perceived the . . . victim as presenting an immediate threat. . . . [E]ven if the murder victim were the most violent person in the world, that fact would not be relevant if the evidence made it clear that the victim was taken by surprise and shot in the back of the head."[3] (*People v. Hoyos* (2007) 41 Cal.4th

---

[3] Both self-defense and imperfect self-defense require that the defendant actually believe in the need to defend himself or herself against imminent peril to life or

6

872, 912-913 (*Hoyos*); see also *People v. Gutierrez* (2009) 45 Cal.4th 789, 828 (*Gutierrez*) ["Where no evidence is presented that the victim posed a threat to the defendant, exclusion of evidence regarding the victim's propensity for violence is proper"].)

The trial court may exclude evidence of a victim's character that is otherwise admissible under section 1103 "if admitting the evidence would have confused the issues at trial, unduly consumed time, or been more prejudicial than probative." (*Gutierrez*, *supra*, 45 Cal.4th at pp. 827-828; *Hoyos*, *supra*, 41 Cal.4th at pp. 912-913.) Under section 352, "the trial court enjoys broad discretion in assessing whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion, or consumption of time."[4] (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.) The trial court's "'exercise of that wide discretion must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.' [Citation.]" (*Gutierrez*, at p. 828, original italics; *People v. Fuiava* (2012) 53 Cal.4th 622, 663 (*Fuiava*) ["We review for abuse of discretion a trial court's ruling to exclude proffered relevant evidence under . . . section 352"].) Here, the trial court did not abuse its discretion in excluding evidence regarding the 2006 incident because the record supports the court's finding the potential for confusing the issues and undue consumption of time outweighed the evidence's "marginal[] probative" value.

---

great bodily injury. Without that subjective belief, both forms of self-defense fail as a matter of law. (*People v. Oropeza* (2007) 151 Cal.App.4th 73, 82.)

[4] Section 352 provides, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

Evidence regarding Torres's violent character was generally admissible at trial because Diaz argued he acted in self-defense when he fought with Torres. (§ 1103, subd. (a)(1).) Diaz's initial statement to the police investigator supported his self-defense claim because he told the investigator Torres pulled a knife and attacked him first. But Diaz significantly undermined the probative value of Torres's violent character when he retracted his self-defense version of the fight. After the police investigator said he did not believe Diaz's initial version, Diaz admitted he was the one who pulled the knife and attacked Torres when Torres insulted him and kicked him in the shin. Indeed, after the police investigator questioned Diaz's initial version, Diaz repeatedly admitted he stabbed Torres because Torres insulted him and made him angry.[5] Diaz never told the investigator he stabbed Torres to protect himself or because he feared Torres. Diaz's admissions he was the aggressor undermine his self-defense claim and the probative value of any evidence regarding Torres's violent character. (See *Gutierrez*, *supra*, 45 Cal.4th at p. 828 [victim's character irrelevant without evidentiary support for self-defense claim]; *Hoyos*, *supra*, 41 Cal.4th at pp. 912-913 [same].)

Moreover, the lack of similarity between the 2006 incident and Torres's fight with Diaz further diminished the 2006 incident's probative value as character evidence of Torres's violent propensity. (See *People v. Wright* (1985) 39 Cal.3d 576, 586-587 [lack of similarity between the crime at issue and the prior violent incident undermined the prior incident's probative value as character evidence].) The 2006 incident involved a verbal confrontation during which Torres threatened to shoot his landlord's son when he attempted to turn off Torres's electricity. Torres did not hit, grab,

_____

5 Diaz contends he did not retract his initial, self-defense version of the fight but rather offered a second version because the police investigator said he did not believe Diaz and warned him there would be negative consequences if Diaz continued to tell a story the investigator did not believe. There is no evidence supporting this claim. Diaz affirmed the second version of the fight he gave was the correct one and he never retracted that version.

stab, shoot, or otherwise have any physical contact with the landlord's son and apparently made the threat to stop the landlord's son from turning off the electricity. The incident here involves a fistfight and stabbing that occurred when Torres insulted Diaz while they were drinking beer together. Although the 2006 incident generally was admissible as character evidence, it had little probative value in showing Torres was the aggressor who started the fight with Diaz because there was no physical fight between Torres and the landlord's son in 2006.

Considering the 2006 incident's marginal probative value, the trial court properly weighed concerns regarding whether evidence of that incident would confuse the issues and unduly consume time. Admitting evidence regarding the 2006 incident would have required a mini-trial on precisely what happened in 2006 because the parties disputed many of the facts surrounding the dispute. For example, the prosecutor argued the landlord's son never saw a gun and no weapons were found at the scene. Diaz asserted the landlord's son saw a gun, but did not know whether it was real, and the police found two pellet guns at the scene. Diaz also claimed the evidence would show Torres made additional threats to the landlord's son and instructed his own son to assault the landlord's son. Finally, the prosecutor argued Torres was not convicted of a crime for the 2006 incident, but Diaz claimed the case against Torres "settled" on a charge of disturbing the peace.

If the trial court admitted the 2006 incident, the jury would have been required to hear the conflicting evidence, resolve the various conflicts, and decide what Torres actually did before considering whether Torres's 2006 conduct had any impact on its decision regarding Diaz's self-defense claim. The trial court did not abuse its discretion in finding this mini-trial could confuse the issues and unduly consume time, especially when balanced against the marginal probative value of the evidence. (See *Fuiava*, *supra*, 53 Cal.4th at pp. 665-666 [need to conduct trial regarding prior incidents offered as character evidence justified trial court's decision to exclude evidence under

section 352]; *People v. Hamilton* (2009) 45 Cal.4th 863, 930 [need for "'a mini-trial'" on character evidence justified its exclusion under section 352].)

Diaz contends evidence of the 2006 incident had more than marginal probative value because Torres's threat to his landlord's son, "You think you're the first person I've killed," corroborated Diaz's statement to the police investigator that he carried his pocketknife when he drank beer with Torres because he heard Torres had killed a man in Mexico. This argument fails. Whether the 2006 incident provided corroboration for part of Diaz's statement to the investigator does not affect the probative value of evidence regarding the 2006 incident. The prosecutor did not dispute Diaz made the foregoing statement to the police investigator and additional evidence to "corroborate" that statement would be duplicative. More importantly, Diaz did not raise this theory of admissibility in the trial court. Nor does this argument change Diaz's admission he attacked Torres because he was angry at Torres, not because he was afraid of him. Diaz's knowledge that Torres allegedly killed a person in Mexico is irrelevant without evidence Diaz stabbed Torres because he was afraid Torres was about to kill him or cause him great bodily injury. (See *Gutierrez*, *supra*, 45 Cal.4th at p. 828 [the defendant offering evidence of the victim's character must provide evidence to support a self-defense claim before that character evidence is relevant]; *Hoyos*, *supra*, 41 Cal.4th at pp. 912-913 [same].)

Diaz also disputes the trial court's conclusion that presentation of evidence regarding the 2006 incident would consume an undue amount of time. According to Diaz, he would have called just three witnesses — his landlord's son, Torres's wife, and Torres's son — to present evidence of the 2006 incident. Diaz argues this could not be considered an undue consumption of time given that the prosecution called a dozen witnesses to present its case and Diaz faced a potential life sentence. Diaz, however, fails to explain how long it would have taken these witnesses to testify nor does he account for the witnesses the prosecution would have called to rebut Diaz's evidence. Diaz's

10

unsupported conclusion the evidence would not have been unduly time consuming does not establish the trial court abused its discretion.

Finally, Diaz contends the trial court's exclusion of the 2006 incident violated his due process rights.  He is mistaken.  "A defendant has the general right to offer a defense through the testimony of his or her witnesses [citation], but a state court's application of ordinary rules of evidence — including the rule stated in . . . section 352 — generally does not infringe upon this right [citations]." (*People v. Cornwall* (2005) 37 Cal.4th 50, 82, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)  Diaz provides no explanation how excluding evidence regarding the 2006 incident under section 352 rose to the level of a due process violation.  (See, e.g., *Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1074 [appellant forfeited challenge by failing to present reasoned argument and explanation].)

III

DISPOSITION

The judgment is affirmed.


ARONSON, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.


11