Filed 6/23/16  P. v. Tepelikyan CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>YERVAND TEPELIKYAN,<br><br>    Defendant and Appellant. | B259332<br><br>(Los Angeles County<br>Super. Ct. No. BA377408) |

APPEAL from a judgment of the Los Angeles County Superior Court, Edmund Wilcox Clarke, Judge.  Affirmed.

Benjamin Owens, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Michael R. Johnsen and Wyatt E. Bloomfield, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## SUMMARY

Defendant and appellant Yervand Tepelikyan appeals from a judgment entered after a jury convicted him of one count of assault with a firearm (Pen. Code, § 245, subd. (a)(2)),[1] one count of discharge of a firearm with gross negligence (§ 246.3, subd. (a)), and one count of carrying a loaded, unregistered handgun (§ 12031, subd. (a)(1)). The jury also found to be true that on the assault count Tepelikyan personally used a firearm within the meaning of sections 1203.06, subdivision (a)(1) and 12022.5, subdivision (a). He was sentenced to a middle term of three years on the assault charge, with four years consecutive on the firearm enhancement and eight months consecutive on the carrying charge, for an aggregate term of seven years and eight months. A two-year concurrent sentence on the discharge count was stayed under section 654.

On appeal, Tepelikyan contends the court erred in his first trial by failing to instruct on self-defense as to the carrying charge and erred in not staying his sentence on the carrying charge under section 654. We affirm.

## FACTS AND PROCEEDINGS BELOW

### I. Prosecution Evidence in First Trial[2]

On the evening of October 6, 2010, three people in a car—an African-American man (John Doe 1), a White man (John Doe 2) and a Hispanic woman—pulled into a shopping center on North Western Avenue in Los Angeles and the two men went into Harold's Cigar Market, where Tepelikyan worked.

Allen Zaroyan, an employee at a restaurant in the same shopping center as the cigar store, testified: Tepelikyan followed the two men into the store and, when they exited, followed them into the parking lot and began arguing with John Doe 1. During

---

[1] Further statutory references are to the Penal Code.

[2] As Tepelikyan's arguments on appeal relate to his conviction of one count of carrying a loaded, unregistered firearm after the first trial, we do not summarize the evidence in the second trial.

2

the argument, Tepelikyan went back inside the store and returned with a gun. Tepelikyan held the gun pointed straight up and continued arguing with John Does 1 and 2, and all three were yelling at each other and screaming, "Fuck you." Tepelikyan yelled, "Fuck you, nigger" to John Doe 1 and pointed the gun at John Doe 2 who was approximately six feet away and then pointed the gun at John Doe 1. Tepelikyan fired two shots into the air and continued arguing with John Does 1 and 2. Tepelikyan then went back into the cigar shop and John Does 1 and 2 left on foot.[3] When Tepelikyan came back out of the cigar shop again he had two guns and ran toward Western Avenue, yelling "I'll shoot you" but John Does 1 and 2 had left the area. Tepelikyan then pointed his guns at a passing African-American pedestrian, Reginald McCoy, and said, "I'm going to shoot you, nigger."

McCoy testified that he went to buy food at a market in the same shopping center as Harold's Cigar Store and passed Tepelikyan and the others arguing. While inside the market McCoy heard the arguing and someone saying, "I'll kill any nigger." When McCoy went outside, he saw Tepelikyan come out of the cigar store with a gun and shoot the gun into the air. John Does 1 and 2 and the woman were standing on the blacktop of the parking lot about three to four feet from Tepelikyan when he fired. They did not leave. Both sides continued arguing and cursing at each other. John Does 1 and 2 did not have any weapons in their hands and had their hands balled into fists during the argument. At some point, Tepelikyan went back into the store and came out with two guns. Tepelikyan said, "I'll kill any nigger" and "Do you have a problem, nigger?" and John Doe 1 said, "Shoot me then." Tepelikyan then shot in the air with both guns. Tepelikyan then approached McCoy, pointing a gun at McCoy, and asked, "You got a problem, nigger?" and McCoy responded, "Whoa. Chill," and raised his hands with

---

[3] Zaroyan testified that at some point earlier during the argument, the woman left in the car. Later in his testimony, Zaroyan stated that John Doe 2 left in the car with the woman.

palms out. While Tepelikyan had his gun pointed at McCoy, the other three got in their car and left.

When Police Officer Aaron Green arrived at the shopping center, several people directed him north and Officer Green looked in that direction and saw Tepelikyan throw a handgun over a chain link fence. Officer Green and his partner detained Tepelikyan. Officer Green and his partner then went to the chain link fence and his partner went over the fence and retrieved two handguns. One of the guns was a .22 caliber handgun registered to Tepelikyan and the other was a .25 caliber handgun that was unregistered. Officer Green found two .25 caliber spent cartridge casings and two live .25 caliber rounds[4] in the parking area of the shopping center.

Police Officer Adrian Maxwell interviewed McCoy in March 2011. In the interview, McCoy told Maxwell that the people in the argument "were getting ready to start fighting. It was going beyond the argument and they were getting ready to fight."

## II.    Defense Evidence in First Trial

The defense did not present any evidence.

## III.    Conviction and Sentencing

On March 11, 2014, the jury at the first trial found Tepelikyan guilty of one count of carrying a loaded, unregistered handgun but could not reach a verdict on the remaining counts, resulting in a mistrial being declared on those counts.

The jury in the second trial found Tepelyikan guilty of one count of assault with a firearm against McCoy and one count of discharge of a firearm with gross negligence and found to be true the firearm use allegation as to the assault count. The second jury was unable to reach a verdict on the count for assault with a firearm against John Doe 1, resulting in a mistrial being declared on that count, and found the hate crime allegation

---

[4] Officer Green stated the live rounds may have been dropped or may have been manually ejected from the gun by pulling the slide.

not true.[5] Tepelikyan was sentenced to an aggregate term of seven years and eight months consisting of a middle term of three years on the assault charge, four years consecutive on the firearm enhancement, and eight months consecutive on the carrying charge. A two-year concurrent sentence on the discharge count was stayed under section 654.

## DISCUSSION

On appeal, Tepelikyan contends the trial court committed an instructional error and a sentencing error. We disagree and affirm.

### I.      Instructional Error

Tepelikyan argues that the trial court erred during the first trial in failing to give an instruction on self-defense as to count 4—carrying a loaded, unregistered handgun in public.

"A defendant is entitled to instruction on request on any defense for which substantial evidence exists. [Citations.] However, the trial court need give a requested instruction concerning a defense only if there is substantial evidence to support the defense." (*People v. Miceli* (2002) 104 Cal.App.4th 256, 267.) Substantial evidence means "evidence from which a jury composed of reasonable persons could conclude that the facts underlying the particular instruction exist." (*People v. Blair* (2005) 36 Cal.4th 686, 744-745.) If the evidence is minimal and insubstantial, the trial court need not instruct on the defense. (*People v. Flannel* (1979) 25 Cal.3d 668, 684 & fn. 12 [it is not the case that "jury instructions must be given whenever *any* evidence is presented, no matter how weak"], overruled on another ground in *In re Christian S.* (1994) 7 Cal.4th 768, 777.) "The trial court is not required to present theories the jury could not reasonably find to exist." (*People v. Oropeza* (2007) 151 Cal.App.4th 73, 78.) We review the trial court's determination de novo and independently decide whether there

_____

[5] The trial court granted Tepelikyan's motion at the end of the prosecution's evidence in the second trial to dismiss the count charging Tepelikyan with assault with a firearm against John Doe 2.

5

was substantial evidence in the record to support the requested instruction. (*People v. Alvarez* (1996) 14 Cal.4th 155, 217.)

At the first trial, according to the police officer who interviewed McCoy, McCoy stated that although McCoy could not tell what the argument was about, "they were getting ready to start fighting. It was going beyond the argument and they were getting ready to fight." In discussing jury instructions with counsel, the court stated that this testimony "provided the necessary evidence to give the self-defense instruction." The court explained: "[T]here are three people against one. [¶] I'm not saying I as a juror would find that to be a justification, or that the response was reasonable, but I think it's enough evidence to put it to the jury."

The trial court gave an instruction on self-defense as to the three assault counts and the discharge count–on which the court eventually declared a mistrial—but not on count 4 for carrying a loaded firearm in public. To support a self-defense instruction, there must be substantial evidence that the defendant (1) reasonably believed that he was in imminent danger of suffering bodily injury or was in imminent danger of being touched unlawfully; (2) reasonably believed that the immediate use of force was necessary to defend against that danger; and (3) used no more force than was reasonably necessary to defend against that danger. (CALCRIM No. 3470; *People v. Romero* (1999) 69 Cal.App.4th 846, 853.) Here, the evidence at the first trial showed that Tepelikyan twice walked away from the argument in the parking lot in order to go into his store to retrieve the guns, while John Does 1 and 2 remained outside. Thus, there was no substantial evidence that Tepelikyan reasonably believed he was in imminent danger from any of the victims when he came back outside the store carrying loaded guns to resume arguing.[6]

---

[6] The evidence showed that Tepelikyan at one point had two guns, one of which was registered to him and one which was not registered, and he was charged with only one count of carrying a loaded firearm that was not registered to him.

## II.    Sentencing Error

Tepelikyan contends that the trial court erred by not staying his concurrent sentence on count 4 for carrying a loaded, unregistered firearm in public under section 654 given his conviction and sentence in count 2 for assault with a firearm against McCoy.

The purpose of section 654 is to ensure that punishment is commensurate with a defendant's culpability. (*People v. Meeks* (2004) 123 Cal.App.4th 695, 705.)  Courts have construed section 654 broadly, restricting punishment for multiple offenses committed with a single objective.  In *Neal v. State of California* (1960) 55 Cal.2d 11, 19, the Supreme Court held where a course of conduct violates more than one statute but is part of an indivisible transaction with a single intent or objective, section 654 applies, and the trial court may impose only one sentence.  But where a defendant entertains multiple criminal objectives that are "independent and not incidental to each other," the court may impose separate punishment even where the violations were otherwise part of an indivisible course of conduct.  (*People v. Sok* (2010) 181 Cal.App.4th 88, 99.)  "It is the defendant's intent and objective that determines whether the course of conduct is indivisible.  [Citation.]  . . . '"[i]f all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, the defendant may be found to have harbored a single intent and therefore may only be punished once."'"  (*People v. Le* (2006) 136 Cal.App.4th 925, 931; see *People v. Alford* (2010) 180 Cal.App.4th 1463, 1466.)

If section 654 applies, the proper procedure is to impose a concurrent term and then stay it.  (See *People v. Hernandez* (2005) 134 Cal.App.4th 1232, 1238-1239.)  Where a court imposes a concurrent term but does not stay the term, we infer the court found defendant had multiple intents or objectives in committing the offenses and rejected the applicability of section 654.  (*People v. Alford*, *supra*, 180 Cal.App.4th at p. 1466.)  Where a court erroneously fails to stay a concurrent term in violation of section 654, it acts in excess of its jurisdiction and the sentence is unauthorized.  (*People v. Cuevas* (2008) 44 Cal.4th 374, 380, fn. 3.)

7

The trial court has broad latitude in determining whether section 654 applies in a given case. (*People v. Garcia* (2008) 167 Cal.App.4th 1550, 1564.) The determination whether the defendant harbored more than one intent or objective is a factual one that will not be reversed on appeal unless unsupported by substantial evidence. (*People v. Saffle* (1992) 4 Cal.App.4th 434, 438.) We review the trial court's factual finding, whether implicit or explicit, in the light most favorable to the prevailing party, presuming the existence of every fact the factfinder could reasonably deduce from the evidence. (*People v. Tarris* (2009) 180 Cal.App.4th 612, 620.)

Here, the evidence showed Tepelikyan argued with John Does 1 and 2 before going into the store to retrieve the first gun, returning outside to continue arguing, fired the gun into the air, going back inside the store, obtaining a second gun, resuming his confrontation with John Does 1 and 2 and firing either one or both guns into the air, before turning to McCoy and pointing one of the guns at McCoy, asking McCoy if he had a problem, and then chasing McCoy. Viewed in the light most favorable to the prosecution, this evidence supports a finding that Tepelikyan harbored a separate objective in assaulting McCoy, that was independent and separate from his earlier objective to arm himself for his confrontation with John Does 1 and 2.

## DISPOSITION

The trial court judgment is affirmed.

NOT TO BE PUBLISHED.

                                                            CHANEY, J.

We concur:


            ROTHSCHILD, P. J.


            JOHNSON, J.

8