Filed 5/30/24  P. v. Campos CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D083714 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. FSB20001025) |
| ALBERTO CAMPOS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, J. David Mazurek and Ronald M. Christianson, Judges.  Affirmed.

David W. Beaudreau, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Kristen Kinnaird Chenelia, Deputy Attorneys General for Plaintiff and Respondent.

While in his vehicle one evening, appellant Alberto Campos saw Patrice Kimes and Bruce Tardy walking on the street. Campos asked Kimes and Tardy if they wanted a ride.  Campos previously dated, remained friends

with, and still loved Tardy's girlfriend, Kimes. As Kimes moved to enter the vehicle, Tardy told her he would beat her if she got in. She did not get in the car. Tardy challenged Campos to a fight, and Campos accepted, stating he would park first. As Tardy walked toward Campos's parked vehicle, Campos remained inside it, shooting Tardy with a rifle from approximately 60 feet away. After trial for Tardy's killing, a jury convicted Campos of first degree murder and shooting from a motor vehicle.

On appeal, Campos contends the trial court erred by declining to give a jury instruction for voluntary manslaughter based on heat of passion. We conclude no substantial evidence existed permitting a reasonable jury to conclude Campos shot Tardy in the heat of passion. Therefore, the trial court properly refused to give the instruction, and we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Kimes dated Tardy on and off for about two years, but while Tardy was in jail, Kimes dated Campos. Kimes started dating Tardy again after his release from custody. At the time of his murder, Tardy and Kimes lived in an apartment with other roommates.

Campos continued to visit Kimes after she reunited with Tardy because Campos still wanted a romantic relationship with her. Campos believed Kimes's life would be better with him than with Tardy. Indeed, Campos offered to take Kimes out of town to escape Tardy.

Known in the neighborhood as a someone who got in fights, Tardy never seemed to use weapons. Also, Tardy felt jealousy when Kimes spent time with Campos. Sometime before the shooting, Tardy told Campos to stop seeing Kimes.

On March 18, 2020, Campos dropped Kimes off at the apartment after smoking marijuana and methamphetamine together. Kimes told Tardy she smoked with Campos, making Tardy angry and jealous.

Later that night, Kimes and Tardy left the apartment to go to a liquor store. Campos drove by and asked if they needed a ride. Kimes moved to get into the vehicle, but Tardy told her she "better not get in the car" or he would "beat [her] ass." She did not get in the car.

Tardy then asked Campos to get out of the vehicle and fight him. Campos agreed and said he would pull over and park. Campos drove ahead, stopped at an intersection for approximately 40 seconds, made a U-turn, and parked his car. Campos remained inside of it.

Meanwhile, Tardy and Kimes continued walking to the liquor store. Then, as Kimes continued to the store, Tardy started towards Campos's vehicle.

As Tardy walked towards Campos's car, Campos fired a gun at Tardy, who was then approximately 60 feet away. At least three minutes elapsed between when Campos parked his car and when he fired at Tardy. The shot struck Tardy in the chest and killed him. Campos immediately drove away.

At trial, the prosecution played for the jury a police interview with Kimes conducted after the shooting. During that interview, Kimes stated that Campos told her he thought about killing Tardy and how he would accomplish it.[1] Kimes testified at trial that a week or two before the shooting, Campos showed her his sniper rifle and practiced shooting it in her presence.

---

[1] However, during trial Kimes testified "[Campos] never said anything about wanting to harm [Tardy] or kill him."

Campos's counsel requested a voluntary manslaughter jury instruction. The trial court denied the request but instructed the jury on self-defense and imperfect self-defense.

Jurors convicted appellant of first degree murder (Pen. Code,[2] § 187, subd. (a); count 1) and shooting from a motor vehicle (§§ 26100, subd. (c), 190, subd. (d); count 2). As to both counts, the jury found true firearm allegations (§§ 12022.5, subd. (a), 12022.53, subd. (c), and 12022.53, subd. (d)). Campos admitted a prior strike conviction (§§ 667, subds. (b)–(i), 1170.12, subds. (b)–(d)) and a prior serious felony conviction (§§ 667, subd. (a), 1192.7, subd. (c)). The court sentenced Campos to a total term of 80 years to life. This appeal followed. Finding no error, we affirm the judgement.

DISCUSSION

Campos argues the trial court erred by declining to instruct the jury on voluntary manslaughter based on heat of passion. He contends the evidence that permitted a reasonable jury to conclude he acted in the heat of passion included: he loved Kimes, he believed Tardy intended to make Kimes a sex slave, Tardy physically threatened Kimes to control her freedom of movement, Campos had a "concerned look" in response to seeing Tardy threaten Kimes about getting into Campos's car, and Tardy walked towards Campos's car after challenging Campos to a fight. Based on our independent review (*People v. Nelson* (2016) 1 Cal.5th 513, 538 (*Nelson*)), we disagree that sufficient evidence supported an instruction of voluntary manslaughter based on heat of passion. We conclude no rational jury could conclude on this evidence that Campos shot Tardy in a state of actual passion or because of legally adequate provocation.

---

[2] Further statutory references are to the Penal Code.

4

Murder is the intentional and unlawful killing of a human being with malice aforethought. (§ 187, subd. (a); *Nelson, supra*, 1 Cal.5th at p. 538.) Manslaughter, a lesser included offense of murder, is the intentional and unlawful killing of a human being without malice. (*Nelson*, at p. 538.) "Heat of passion is one of the mental states that precludes the formation of malice and reduces an unlawful killing from murder to manslaughter." (*Ibid.*) The court must instruct on the lesser included offense of manslaughter based on heat of passion " 'only if there is substantial evidence from which a jury could reasonably conclude that the defendant committed the lesser, uncharged offense, but not the greater, charged offense.' " (*Ibid.*)

"Heat of passion arises if, ' "at the time of the killing, the reason of the accused was obscured or disturbed by passion to such an extent as would cause the ordinarily reasonable person of average disposition to act rashly and without deliberation and reflection, and from such passion rather than from judgment." ' [Citation.] Heat of passion, then, is a state of mind caused by legally sufficient provocation that causes a person to act, not out of rational thought but out of unconsidered reaction to the provocation." (*People v. Beltran* (2013) 56 Cal.4th 935, 942 (*Beltran*).) Heat of passion includes both subjective and objective components. (*People v. Manriquez* (2005) 37 Cal.4th 547, 584 (*Manriquez*).) Here, both lacked supporting evidence.

The subjective component of heat of passion requires that the defendant "killed while under 'the actual influence of a strong passion' induced by such provocation." (*People v. Moye* (2009) 47 Cal.4th 537, 550 (*Moye*).) Heat of passion requires "extreme intensity" of emotion, including " ' " ' "[v]iolent, intense, high-wrought or enthusiastic emotion." ' " ' " (*Beltran, supra*, 56 Cal.4th at p. 950.)

5

The record here lacks substantial evidence that Campos acted with intense emotion such that when he shot Tardy he reacted without reflection. To establish his intense feeling Campos points to evidence that he had a "concerned look" after Tardy told Kimes not to get into Campos's car, and that Campos loved Kimes and believed Tardy mistreated Kimes. Campos's "concerned look" is based only on Kimes's testimony that Campos's "expression to me was, like, What's wrong? Aren't you gonna still get in? But that was just what I read." Kimes's interpretation of Campos's expression, even if it showed concern and even if he loved Kimes, is not substantial evidence allowing a rational jury to conclude that, at the time Campos fired his weapon, he acted with the intense emotion required for heat of passion. (See *Manriquez, supra*, 37 Cal.4th at p. 585 ["Escamilla's testimony contained no indication that defendant's actions reflected any sign of heat of passion at the time he commenced firing his handgun at the victim. There was no showing that defendant exhibited anger, fury, or rage; thus, there was no evidence that defendant "actually, subjectively, kill[ed] under the heat of passion."]) Campos fails to cite to any authority for the conclusion that a "concerned look" amounts to substantial evidence of intense emotion supporting the subjective aspect of heat of passion, with or without his general feelings for Kimes.

Any rational jury would instead view this evidence as " 'a concerted effort to plan and execute a surprise attack,' not rash action." (*People v. Rangel* (2016) 62 Cal.4th 1192, 1225.) Campos armed himself with a rifle, drove near Tardy and Kimes's apartment, interacted with Tardy and Kimes, and waited in his parked vehicle for several minutes until Tardy walked toward the vehicle alone, then shot Tardy from a distance. Kimes also told police Campos had previously discussed killing Tardy and how he would do it.

Likewise, no rational jury could have found the objective component for heat of passion: An adequate provocation that would cause an ordinary person of average disposition to react to this situation with the extreme emotional intensity. The objective component of heat of passion exists to prevent the defendant from "set[ting] up his own standard of conduct" to justify his actions. (*People v. Steele* (2002) 27 Cal.4th 1230, 1252.) Although the provocation need not move the ordinary person of average disposition to kill, "[t]o be adequate, the provocation must be one that would cause an emotion so intense that an ordinary person would simply *react*, without reflection." (*Beltran, supra*, 56 Cal.4th at p. 949.) The intense emotion must be such that the ordinary person would "become so inflamed as to lose reason and judgment." (*Manriquez, supra*, 37 Cal.4th at p. 586.)

An attempt to instigate a fight with Campos is not adequate provocation. (*Manriquez, supra*, 37 Cal.4th at p. 585 [finding no adequate provocation when the victim "taunted defendant, repeatedly asserting that if defendant had a weapon, he should take it out and use it"].) Nor does any other evidence elevate Tardy's actions to provocation supporting heat of passion. In the days prior to the shooting, Kimes told Campos that Tardy wanted her to be his on demand sexual partner and she refused. Certainly, after Tardy threatened Kimes days later, an ordinary person of an average disposition who cared about Kimes could be angry and seek to help her, but he would not lose all reason and judgment. That a reasonable person would be compelled to anger is not sufficient. (See *People v. Oropeza* (2007) 151 Cal.App.4th 73, 83 [concluding it was insufficient that "an ordinarily reasonable person might be angered by the act"].)

In sum, the court correctly concluded that substantial evidence did not support a heat of passion claim. The court properly denied Campos's request for a voluntary manslaughter instruction based on that theory.

Having concluded there was no instructional error, there was no constitutional violation. (*People v. Holloway* (2004) 33 Cal.4th 96, 141 [Neither the federal nor California constitutions are "infringed when a theory of voluntary manslaughter unsupported by any substantial evidence is omitted from the law presented to the jury."].)

DISPOSITION

We affirm the judgment.

RUBIN, J.

WE CONCUR:


HUFFMAN, Acting P. J.


IRION, J.

8