Filed 7/15/15  P. v. Adams CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>LEO LLOYD ADAMS,<br><br>     Defendant and Appellant. | B252187<br><br>(Los Angeles County<br>Super. Ct. No. TA103351)<br><br>ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT*

It is ordered that the opinion filed June 26, 2015, be modified as follows:

1.  The following paragraph is inserted in place of the last sentence in the first paragraph on page 2:

"In supplemental briefing, appellant argues the court erred in failing to instruct the jury that the doctrine of natural and probable consequences cannot be used to support first degree murder and the error was prejudicial because there was no evidence of intent to kill, premeditation and deliberation.  He also argues the use of the doctrine to support the first degree attempted murder charges violated his right to due process because it allowed the jury to convict him without proof of express malice, premeditation and deliberation. We find no prejudicial error and affirm."

2.  A section III is inserted after section II and before the DISPOSITION, consisting of the following text:

"III

Appellant challenges the application of the doctrine of natural and probable consequences to the murder and attempted murder charges in his case.

*A. First Degree Murder*

The jury was instructed that it could find appellant guilty of murder on two theories:  as aider and abettor of murder and as aider and abettor to assault with a firearm where murder was a natural and probable consequence of the target crime.  Appellant argues the second instruction was erroneous because, under *People v. Chiu* (2014) 59 Cal.4th 155, 167, "a defendant cannot be convicted of first degree premeditated murder under the natural and probable consequences doctrine. . . ."  Respondent does not dispute *Chiu*'s retroactive application, and concedes it was error to instruct the jury on the doctrine in relation to the murder charges.

The parties disagree whether the instructional error was harmless.  "When a trial court instructs a jury on two theories of guilt, one of which was legally correct and one legally incorrect, reversal is required unless there is a basis in the record to find that the verdict was based on a valid ground.  [Citations.]" (*Chiu*, *supra*, 59 Cal.4th at p. 167.)  In *Chiu*, the jury complained about a holdout juror who appeared to prevent a unanimous verdict on first degree premeditated murder based on the doctrine of natural and probable consequences; the jury reached a verdict after the holdout juror was replaced.  (*Id*. at p. 168.)  On that record, the court could not conclude beyond a reasonable doubt that the jury based its verdict on the theory that defendant directly aided and abetted the murder.  (*Ibid*.)

Here, there is no indication that the jury based its verdict on the natural and probable consequences doctrine; to the contrary, another instruction and the prosecutor's closing argument directed the jury to find appellant aided and abetted murder with the intent to kill.  The jury was instructed with CALCRIM 702 that the special circumstance allegation of multiple murder (Pen. Code, § 190.2, subd. (a)(3)) required the prosecution

to prove beyond a reasonable doubt that appellant acted with "the intent to kill."  In closing argument, the prosecutor focused on the fact that appellant brought a "loaded and already cocked" assault rifle "ready to be fired" in what he knew was "a gang fight." She argued this fact showed appellant directly aided and abetted the murders and had the specific intent to kill.  Although the prosecutor addressed the natural and probable consequences doctrine, she strongly suggested that bringing a loaded gun was inconsistent with lack of knowledge that the gun would be used to kill.

The jury found the multiple murder allegation to be true, which means that, as instructed, it must have found appellant acted with intent to kill.  (*People v. Murtishaw* (1989) 48 Cal.3d 1001, 1044 [jurors are presumed to follow court instructions].)  Because aider and abettor liability under the natural and probable consequences doctrine does not require an intent to kill (*Chiu*, *supra*, 59 Cal.4th at p. 165), the jury's finding of such an intent shows it did not rely on the natural and probable consequences doctrine to find appellant guilty of murder.

Appellant argues the instructional error was prejudicial because the evidence does not support a finding that he acted with premeditation and deliberation or intended to aid and abet premeditated murder because he did not know what Brim would do with the rifle.  Factors such as planning, motive, and the manner of killing are relevant to the inference that a murder was a result of "'preexisting reflection and weighing of considerations rather than mere unconsidered or rash impulse.' [Citation.]"  (*People v. Cole* (2004) 33 Cal.4th 1158, 1224.)

That appellant brought a loaded rifle, engaged and ready to fire, which Brim immediately fired at an unarmed rival gang member as a result of an ongoing gang war, shows appellant had given advance consideration to the possibility the rifle would be used to commit murder and had planned accordingly with a gang-related motive in mind. (See, e.g., *People v. Lee* (2011) 51 Cal.4th 620, 636 [bringing loaded gun shows consideration of possibility of violence]; *People v. Miranda* (1987) 44 Cal.3d 57, 87, disapproved on another ground in *People v. Marshall* (1990) 50 Cal.3d 907, 933, fn. 4

[bringing loaded gun to kill unarmed victim reasonably suggests advance consideration of murder].)

Appellant's professed lack of knowledge of Brim's intentions is belied by the record, which shows Brim and appellant showed up at the scene within minutes of each other after Roberson called for reinforcement; they appeared to be acting in concert, with Brim purposefully retrieving from appellant's car the loaded rifle appellant had brought and immediately firing it; and they fled the scene after the shooting. (See *People v. Campbell* (1994) 25 Cal.App.4th 402, 409 [presence at crime scene, companionship, and conduct before and after crime, including flight from scene, relevant to shared common purpose].)

Under the circumstances, the instructional error was harmless beyond a reasonable doubt. (*People v. Vega-Robles* (2015) 236 Cal.App.4th 554, 578–579.)

B. *First Degree Attempted Murder*

Appellant contends that the instruction on the natural and probable consequences doctrine permitted the jury to convict him of first degree attempted murder based on its reasonable foreseeability and without proof of intent to kill or premeditation and deliberation. His contentions are admittedly contrary to the holdings in *People v. Favor* (2012) 54 Cal.4th 868 and *People v. Medina* (2009) 46 Cal.4th 913, which the California Supreme Court left undisturbed in *Chiu*, *supra*, 59 Cal.4th 155, 161–163. As appellant recognizes, we must reject these contentions under principles of stare decisis. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)"

The petition for rehearing is denied. There is no change in judgment.

_____

\*EPSTEIN, P. J.　　　　　　　WILLHITE, J.　　　　　　　MANELLA, J.

4

Filed 6/26/15  (unmodified version)
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LEO LLOYD ADAMS,<br><br>    Defendant and Appellant. | B252187<br><br>(Los Angeles County<br>Super. Ct. No. TA103351) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Larry P. Fidler, Judge.  Affirmed.

Stephen Temko, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Steven E. Mercer, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Leo Lloyd Adams appeals from a judgment entered after his jury conviction of two counts of first degree murder and three counts of attempted murder, as an aider and abettor, with gang and firearm enhancements. He contends the trial court erred in not instructing the jury about voluntary manslaughter, based on imperfect defense of another. He also contends defense counsel was ineffective for not advising him of his right to testify. We disagree and affirm.

## FACTUAL AND PROCEDURAL SUMMARY

In 2008, the Grape Street Crips gang was at war with the East Coast Crips gang. On September 23, 2008, Debruce Smith, a member of the 89 East Coast Crips, was at the Compton train station with his girlfriend, Jacqueline Spinks, and his best friend, Terry Dozier. Two individuals drove up to Smith and told him that there was a "grapester" behind them and that one of them "got into it with him, but he ain't nothing."

Richard Roberson was a member of the Grape Street Crips. As he walked past Smith, Smith recognized him as the "grapester" in question. Smith caught up with Roberson and the two appeared to argue. Roberson then walked past Spinks, talking on his cell phone. She overheard him mention the name Beezy or Breezy and say, "I got into it with a coaster." When Spinks asked Smith what had happened, he, too, answered, "I got into it with him." Spinks asked Smith to leave, but he refused, stating, "He wanted to call his people, I'm going to call mine." He nevertheless agreed to "walk away," and they started walking back.

When Smith's cousin, Tinnar Wilson, joined them, Smith was pacing on the platform. Roberson was standing nearby with two other individuals and was talking on his cell phone. Smith identified Roberson as a member of an enemy gang and told Wilson, "This young cat right here is trippin." As Smith headed off the platform, Roberson ran after him and made derogatory statements about Smith and his gang. Wilson offered to "fade," or fistfight, Roberson. Roberson responded, "When my homies get here, there ain't going to be no fading." Smith was on parole and did not want to fight, but he again refused to leave the area.

2

At some point, a black Tahoe pulled up to the station, and three women and appellant's codefendant Ronald Brim got out. Minutes later, appellant, a member of the 118th Street Watts Crips Gang whose nickname was "Beezy," arrived in a champagne-colored car. Roberson was overheard saying, "It's going down," and telling Brim, "There goes those niggas there." Brim reached in through the front passenger window of appellant's car and pulled out an automatic rifle. He said, "You bitch ass ain't going to do nothing," cocked the rifle, and fired at least 12 shots. Smith and Dozier were shot as they were running away and died at the scene. Three bystanders at the crowded station were wounded.

The black Tahoe and a gold-colored car were captured by surveillance video at the train station. Brim was arrested for drunk driving, and an officer identified his Tahoe as the one involved in the shooting. Spinks and another bystander identified Roberson in a six-pack photographic lineup. Appellant was arrested in 2010. He owned a gold Pontiac similar to the champagne-colored car involved in the shooting. Cell phone records indicated that phones registered to Brim and appellant were used near the train station at the time of the shooting and travelled away from the area afterwards. A call from a phone registered to Brim was placed to appellant's phone immediately before the shooting.

Appellant, Roberson, and Brim were charged in a consolidated information with two counts of first degree murder (Pen. Code, § 187, subd. (a)) and three counts of willful, deliberate and premeditated attempted murder (*Id*., §§ 664, 187, subd. (a)), with gang, multiple murder, and firearm enhancement allegations (*Id*., §§ 186.22, subd. (b)(1)(C), 190.2, subd. (a)(3), 12022.53, subd. (d)).[1] Appellant's defense at trial was that on September 23, 2008, he had been at work between 7:00 a.m. and 7:00 p.m. and could not have been at the Compton train station at about 6:30 p.m. when the shooting occurred.

---

[1] In a separate count, Brim was charged with possession of a firearm by a felon. He and appellant were tried before the same jury. Brim received the death penalty. Roberson, who was a minor at the time of the shooting, was tried separately.

3

The jury convicted appellant as charged, found the murders to be in the first degree, the attempted murders to be willful, deliberate, and premeditated, and the special allegations to be true. The trial court denied appellant's motion for a new trial and sentenced him to two life sentences without the possibility of parole, three life sentences with the possibility of parole, and an additional 125 years.

This appeal followed.

## DISCUSSION

### I

Appellant argues that the court erred in not instructing the jury, sua sponte, on voluntary manslaughter based on imperfect defense of another. His theory is that he rushed to the scene to aid Roberson, who had called for help.

Even in the absence of a request, the trial court must instruct on lesser included offenses whenever there is substantial evidence that the lesser, but not the greater, offense was committed. (*People v. Breverman* (1998) 19 Cal.4th 142, 154.) Voluntary manslaughter based on imperfect self-defense or defense of another is a lesser offense included in the crime of murder. (*People v. Randle* (2005) 35 Cal.4th 987, 997, overruled on a different ground in *People v. Chun* (2009) 45 Cal.4th 1172, 1201; *People v. Barton* (1995) 12 Cal.4th 186, 201.) We independently review whether the trial court erroneously failed to instruct on a lesser included offense. (*People v. Avila* (2009) 46 Cal.4th 680, 705.)

Initially, we disagree with respondent's suggestion that an aider and abettor is not entitled to rely on imperfect self-defense or defense of another. As respondent recognizes, in the aider and abettor context, the mens rea of each participant in a crime ""float[s] free"" and is independent of that of any other participant. (*People v. McCoy* (2001) 25 Cal.4th 1111, 1119.) Thus, an aider and abettor may be guilty of a greater or lesser homicide-related offense than the perpetrator. (*Id*. at p. 1122; *People v. Nero* (2010) 181 Cal.App.4th 504, 507.) It follows that an aider and abettor may rely on the doctrine of imperfect self-defense or defense of another to mitigate the mens rea by

4

negating the malice element of murder.  (See *People v. Randle*, *supra*, 35 Cal.4th at pp. 994–995.)

The doctrine of imperfect defense of another requires that the defendant must have had "an actual but unreasonable belief he must defend another from imminent danger of death or great bodily injury."  (*People v. Randle*, *supra*, 35 Cal.4th at p. 997.)  For an instruction based on this doctrine, there must be substantial evidence from which the jury could find the defendant actually had the requisite belief.  (Cf. *People v. Oropeza* (2007) 151 Cal.App.4th 73, 82 [imperfect self-defense].)  When a defendant does not testify or make out-of-court statements, substantial evidence of his or her state of mind may be found in the testimony of other witnesses.  (*Ibid.*)

Here, no witness testified appellant rushed to help Roberson because he actually believed him to be in imminent danger of death or great bodily injury.  There was no evidence that the confrontation between Roberson and Smith was escalating to a fight at the time Roberson made the phone call.  Nor is there evidence Smith or anyone else was armed and threatening Roberson.  To the contrary, Wilson testified that Smith did not want to fight.  There is no evidence that when Roberson said he "got into it" with Smith, he meant that he and Smith had gotten into a physical altercation or that he needed help because he was in danger.  Spinks repeatedly used the phrase "got into it" to mean "argue."

The evidence indicates Roberson sought to escalate what was essentially a verbal confrontation to gun warfare.  That is how Wilson understood Roberson's statement that when his "homies" got to the station, there would be no fist fighting.  Smith's statement that Roberson was "trippin," and the fact that Smith, too, considered calling his "homies" also indicate Roberson was overreacting and attempting to escalate the conflict rather than asking for help because he was in immediate danger.  Notably, there is no evidence that Smith actually called for reinforcements or that Roberson sought help because he feared an escalation of the conflict by Smith.

Since there is no direct evidence of appellant's state of mind and the circumstantial evidence indicates Roberson did not seek help because he was in

5

immediate danger of death or great bodily injury, it would be speculative to conclude that appellant was under an actual belief that he needed to bring an assault weapon to the train station in order to defend Roberson from such danger. The trial court was not required to present a speculative theory the jury could not reasonably find to exist. (*People v. Oropeza*, *supra*, 151 Cal.App.4th at p. 78.) No instructional error occurred.

## II

Appellant complains of ineffective assistance of counsel because trial counsel did not advise him of his right to testify and did not seek clarification whether appellant's prior conviction of possession of an assault weapon could be used for impeachment. The decision whether to testify "is made by the defendant after consultation with counsel. [Citations.]" (*People v. Carter* (2005) 36 Cal.4th 1114, 1198.) To establish a denial of the right to effective assistance of counsel, a defendant must show that his or her counsel's performance was deficient and that there was a reasonable probability of a more favorable result but for the deficiency. (*Strickland v. Washington* (1984) 466 U.S. 668, 687, 691–694; *People v. Frye* (1998) 18 Cal.4th 894, 979.)

Appellant raised the claim of ineffective assistance of counsel in his motion for a new trial. In a declaration supporting the motion, appellant stated he wanted to testify but his trial attorney advised him not to because he would be impeached with his prior conviction for possessing an assault weapon. According to appellant, counsel did not advise that the ultimate decision whether to testify was appellant's. During the hearing on the motion, counsel testified that, in his long career as a criminal defense attorney, his usual practice had been to advise his clients of their absolute right to testify; even though he did not specifically recall having done so in appellant's case, counsel saw no reason why he would have deviated from that practice. The trial court found counsel to be credible and the timing of appellant's claim to be suspect as it was "hard to believe" appellant would not have raised the issue earlier if he really wanted to testify.

Defendant would have us redetermine issues of credibility, but we may not interfere with the trial court's reasonable factual determinations at the hearing on the motion for a new trial, as they are supported by substantial evidence. (*People v. Delgado*

6

(1993) 5 Cal.4th 312, 329; *People v. Rabanales* (2008) 168 Cal.App.4th 494, 509.) It was reasonable for the trial court to infer that, in this case, trial counsel followed his usual practice of advising his clients of their right to testify. (See *People v. Lewis* (1999) 74 Cal.App.4th 662, 668 [usual practice testimony supports inference of act in conformity on particular occasion].) It also was reasonable for the trial court to discredit appellant's post-trial claim that his attorney prevented him from testifying. "When the record fails to disclose a timely and adequate demand to testify, 'a defendant may not await the outcome of the trial and then seek reversal based on his claim that despite expressing to counsel his desire to testify, he was deprived of that opportunity.' [Citations.]" (*People v. Alcala* (1992) 4 Cal.4th 742, 805–806.)

Contrary to appellant's representation on appeal, counsel recalled advising appellant before trial of his right to a hearing on whether his possession of assault weapon conviction could be used to impeach him. By the time the defense presented its case, there was clear authority that possession of an assault weapon was a crime of moral turpitude that could be used for impeachment. (*People v. Gabriel* (2012) 206 Cal.App.4th 450, 457–458.)

The trial court's conclusion that counsel's performance was not deficient is supported by substantial evidence, as is its conclusion that appellant's testimony would not have made a more favorable result reasonably probable. Appellant was able to present his alibi defense through his co-workers and employment records, and his testimony that he was at work at the time of the shooting would have been cumulative. Appellant's claim that he could have convinced the jury he loaned his phone out is suspect since it would have been impeached with his prior inconsistent statement to the investigating officer. We find no ineffective assistance of counsel under the circumstances.

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EPSTEIN, P. J.

We concur:


WILLHITE, J.


MANELLA, J.

8